Petey Cunningham of the Federal Defender's Office on behalf of the appellant. I've taken 15 minutes and I'd like to reserve four minutes if possible. As currently interpreted, 4241 D requires the court to detain a defendant found incompetent to stand trial. Speak up a little. Pull that mic closer. There you go. Requires the court to detain a defendant found incompetent to stand trial due to an intellectual disability, regardless of whether he is eligible for release under the Bail Reform Act. This is simply offensive and unconscionable by today's standards. Mandatory detention is completely unnecessary. We know that from the success of outpatient competency restoration programs in Arizona and many other states which have to meet the same competency standards. Defendants sometimes have to spend more time in custody for competency restoration than they would if they were ultimately convicted. This mandatory detention violates due process, equal protection, a hybrid of those guarantees, the Eighth Amendment, and disability laws. And the court could also interpret the statute to avoid these concerns. I'll start with a due process issue. Heightened scrutiny must apply here because pretrial liberty is a fundamental right that is clear under Salerno, Falca, and Lopez Valenzuela. This court is not bound by Strong. After Strong, this court sitting on Bank and Lopez Valenzuela held that mandatory pretrial detention without an individualized determination of whether detention is necessary to achieve the government's interests violates due process. Pretrial detention cannot be based on an irrebuttable presumption. The analysis here is identical. In Lopez Valenzuela, the government's interest was assuring the presence of undocumented defendants at trial. Here, the government's interest is achieving competency restoration for trial. In both circumstances, the government just wants to proceed with the prosecution. I don't see any difference in the analysis of these cases. And under Miller v. Gami, this court is not bound if the reasoning of the intervening higher authority is clearly irreconcilable with the prior panel decision. But counsel, in that case, that was concerning the Arizona Prop 100, correct? Yes, Your Honor. And the court in that, in Lopez Valenzuela, talked about some of the, I agree, didn't actively look at the Federal Bail Act versus Prop 100, but it did talk about some of the things that were unique to Prop 100, correct? Well, the thing that was unique to Prop 100 is that it was mandatory. It was an irrebuttable presumption, whereas under the Bail Reform Act, the government has to prove that no set of conditions of release will satisfy the government's purpose. And so that is the salient point here. 4241d, at least as it's been interpreted so far, is mandatory, no matter what, how affected outpatient treatment is. It's mandatory. The question I was going to ask is, is there anything that keeps the Attorney General, once he detains the person, from prescribing outpatient treatment as more economical or more efficacious? Has that been discussed at all? Because simply as I read it on its face, when the Attorney General detains someone, it means that he is under your power. He can keep you in a facility or let you go under appropriate conditions. It's just that now it's the Attorney General's power. Or do you say that the 4241 absolutely requires that he be maintained in carceral circumstances? Your Honor, that's a very good question. Strong and the other Federal cases seem to indicate that it is mandatory, at least inpatient hospitalization is mandatory. The court shall commit to the Attorney General and the Attorney General shall hospitalize. And that's how the Attorney General has interpreted it. And that's they delegated it to BOP, and in BOP's program statement, inpatient hospitalization at a Federal medical center is mandated. But we certainly want to Has DOJ issued any regulations that confirms just what you said? Yes. And I have them. I can submit them afterward, but I do have them. It's clear Are they policy statements or in the CFR? Well, the CFR delegates it to BOP, and then the program statement set forth, BOP policy that it will be custodial hospitalization at a Federal medical center. We remand to custody, to the Bureau of Prisons, for sentence, and we leave it to the warden to decide, to the Bureau of Prisons, what to do with prisoners. We don't tell them where to put people or what to do. And sometimes they put them in halfway houses, or they do something Well, Your Honor, that's not the way they're operating here. And so if this Court determines that inpatient hospitalization isn't mandatory, then BOP and the Attorney General need to change the way that they're doing things. And one problem, too, is that BOP facilities, they have only certain facilities that deal with these sorts of issues. None of them are in Arizona. So our clients have to be sent thousands of miles away, far away from their family, which is the worst possible scenario and the worst possible way to help these people achieve competency, for many of them, if they're intellectually disabled. But the Constitution also compels this. And it's not just Lopez Valenzuela, but also SELL that compels the consideration of whether inpatient hospitalization is necessary after the government must prove under SELL's framework that, by clear and convincing evidence, that no less restrictive alternative is substantially likely to achieve the same result. And in SELL, although SELL was issued a few years before STRONG, the STRONG Court didn't consider it. And it set forth the framework for how to balance a sufficient, a significant liberty interest against the government's countervailing interest in competency restoration in achieving competency restoration in this context. So our position is that Lopez Valenzuela and SELL compel the consideration of less intrusive alternatives. And I take it there's nothing peculiar to your client here that would be essentially different from anyone else subjected to 4241D. If we agree with you, it means then the government cannot detain people for this reason. Well, it requires an individualized determination of whether it's necessary. Whether less intrusive alternatives But what would be the, quote, necessity here? There's no statutory framework for it, then, is it? In other words, the government, what would they say? That this person is incompetent and we'd like to have him for a while because it would be helpful? I mean, unless there were a new statute to have a new constitutional argument, they would not be able to detain them for any reason other than the conventional flight risk and so on, would there? Well, Your Honor, other statutes, I think the Arizona statute is instructive here. Some of the factors that other States consider is whether the defendant is You're just saying there could be a different statute. Well, Your Honor I'm basically asking, you know, a straightforward question. Wouldn't this render unconstitutional every detention under 4241? No, Your Honor. Every mandatory detention. The constitutional test would be can the government demonstrate by clear and convincing evidence that less restrictive alternatives are substantially unlikely to reach the same result. That is the cell test, and that would be the case here. And factors such as whether the defendant is willing to accept treatment as a condition of pretrial release, whether, if the defendant needs to be medicated and is unwilling to make determinations. Who would make those determinations? The trial judge. The judge. The district court, yes. With the burden on the government to say, this person is incompetent, and here's our treatment plan, and then your side says, well, that's not a good treatment plan. Yes, Your Honor. And I believe it's a constitutionally required test. And it's not only required by the Due Process Clause. It's also required by the Equal Protection Clause. And in the 28J, number 76, I, in doing some more research and reaching out to equal protection scholar in this area who alerted me to the fact that this is a hybrid claim. This is not just a standalone due process or standalone equal protection. It's a hybrid because it implicates equality, fundamental fairness, and basic human dignity. And in doing research into this area, I reread Bearden. And the situation in Bearden is so closely analogous, but it's more compelling in this context because a person has even less control over whether they have an intellectual disability than they do over whether they can pay a fine. And the person's interest in pretrial liberty is stronger because it's bolstered by the presumption of innocence, whereas the probationer's interest in liberty is conditional. That person has already been convicted of a crime for which prison is authorized. So I'd ask the Court to carefully consider that as well, because we strongly believe that Bearden compels relief as well as the Due Process Clause. And I will reserve the rest of my time. Thank you. Your Honors, may it please the Court, Chris Carlson with the Arizona Center for Disability Law as amicus counsel for the appellant. The Rehab Act of 1973 and the Supreme Court's Olmstead decision have defined what constitutes a suitable facility for the treatment of individuals with intellectual disabilities. And it is the most integrated setting appropriate to that individual's needs. The Rehab Act and Olmstead do not treat individuals with disabilities as a homogenous group. They recognize that each person has different care and treatment needs based on that individual's characteristics, and that there is no one setting that's going to be appropriate for everyone. The Competency Restoration Stat, 4241, can and should be consistent with those laws. 4241 states that individuals who have been deemed incompetent shall be hospitalized for treatment in a suitable facility. But in 4247, the statute defines suitable facility as one in which is suitable to the care and treatment of an individual, given the nature of the offense and the characteristics of the defendant. And that sort of analysis is not being done in these cases. Let me ask you that. This particular argument or claim, whatever you want to call it, was not raised in the district court. Because most of this is sealed, I'm not entirely sure what was filed in the district court or not. I haven't had access to those specific filings as amicus counsel. Assume for a moment that it was not argued in the district court. Why should we now, assuming no district court development of this issue, why should we now take it up? This is an issue of statutory construction. And even without an argument at the district court level, the federal magistrate or the judge in this case would have been using statutory construction to remand to the custody of the Attorney General's office and also to place in the custody of a suitable facility, which is really what the BOP regulations require. They don't just require that the court, you know, give to the custody of the Attorney General. The BOP regulations state that involuntary hospitalization of these inmates under 4241D requires a court determination that the person may be suffering from a mental disease or defect, so I assume that that happened at the district court level, for treatment of which he needs custody in a suitable facility. And so BOP is relying on the courts to make that determination for them. And in this case, that's happened numerous times. The court is determining what's a suitable facility, and because the Attorney General is placing these individuals in mandatory custody, they're doing it in violation, well, maybe not in violation, but certainly without respect to the Rehab Act in Olmstead and not reconciling those statutes. So what would you have us hold? I'd have you hold that a suitable facility is as it's described in 4247, that it requires an individualized determination of the characteristics of the person in order to determine where they're going to be placed. And that should be a task of the district court judge? Yeah, I think it should be, because it's an issue of statutory construction, because it's not just where that person is going to be placed. It's not asking the court to specifically say this person needs to be shoved away into, you know, North Carolina somewhere. It's just saying that the Attorney General needs to apply Olmstead Rehab Act 4247 in order to be internally consistent and make sure that an individualized determination is being made as to So you would say that the district court judge should order the Attorney General to make a particular determination within each case whether or not outpatient care would be appropriate or whether inpatient would be I don't think it would be an individual determination in each case. I think it would be a statement saying that they need to consider the characteristics of the defendant generally in order to make a determination of what a suitable facility is actually going to be. In other words, the district court wouldn't make the determination that somebody needs to be, should be treated outpatient or in a facility? No, the district court would, and this court I believe too, would just be saying that a determination that we find under Olmstead and the Rehab Act has to be consistent. It's going to mean that an individualized determination needs to be made by the Attorney General to determine what a suitable facility is in coordination with those statutes. And I think that the statutory language of 4241 certainly allows So then, your answer to Judge Paez was that the district court doesn't do it. The Attorney General would do it and then he could be challenged. So let's suppose you win here under that theory. District court says, okay, you know, not mandatory, but I don't do anything about mandatory. I remand him to your custody and then if you decide to hospitalize him, then you can sue the Attorney General? If they decide to hospitalize him in a way that's unjustifiable or inconsistent with the Rehab Act or Olmstead, it's not considering the most integrated setting possible. I understand. Then yes. So then you would seek habeas corpus and say, you know, you the Attorney General take him out of Butner and send him over to the, either send him to Raleigh, North Carolina, outpatient? That may very well be the correct criminal procedure. I personally would sue them under the Rehab Act or the Olmstead decision. And then seek a mandatory injunction to do the same thing? Yes, probably a preliminary injunction to do the same. Your time is up. Thank you very much. Thank you, Your Honor. We'll hear from the government. Good morning. Shelley Clemens on behalf of the U.S. Attorney's Office for the District of Arizona, Tucson Branch. This court should affirm the district court's finding that inpatient treatment under 4241D is mandatory as set forth in the statute, and affirm this court's order remanding the defendant to the custody of the Attorney General for commitment in an appropriate treatment facility for purposes of restoration for trial, starting with the substantive due process argument. The test for competency in a case like this is whether or not a person has sufficient present ability to consult with his lawyer with a reasonable degree of rationality as well as a factual understanding of the proceedings before him. As this Court held in U.S. v. Strong, 4241D has already been found to be constitutional. In Strong, this Court rejected similar arguments that have been made by the defense today. In Strong, the defense claimed that the mandatory detention of all incompetent defendants violated due process, specifically, one, because it didn't consider alternative, less restrictive treatments and their efficacy of them, nor, and in addition, the defendant in that case argued that there should be heightened scrutiny based off Rito v. Flores and Demore v. Kim. But this Court rejected those arguments and categorically held that 4241D is unambiguous and mandates inpatient hospitalization. It further held that it did not violate due process to do that. The Strong Court relied heavily on the U.S. Supreme Court's case of Jackson v. Indiana, which, again, ultimately did hold that indefinite commitment of incompetent defendants would be unconstitutional. However, in a making their holding, the Supreme Court set forth substantive language regarding the constitutionality of committing incompetent defendants, noting that so long as there is a reasonable period of time necessary to determine whether or not there is a substantial probability that the person can attain capacity in the foreseeable future. Under those standards, which the Congress clearly codified that language and was paying attention to Jackson when they drafted 4241D, the Court in Jackson basically set the minimum substantive due process limitations or boundaries, if you will, under which somebody could be detained. The defendant cites to Lopez-Valenzuela, stating that that's an intervening decision. However, first of all, Lopez-Valenzuela did not deal with 4241D and the commitment of persons for purpose of competency. Instead, Lopez-Valenzuela dealt with the blanket under Prop 100 detention of persons who did not do the fact of their alienage. But contrary to what was in the language of Prop 100, under 4241D, there are safeguards in place to ensure that someone is just not being held and being held unnecessarily for a long period of time. 4241D has mandatory caps in it, consistent with the language in Jackson v. Indiana, that they won't be held for more than a reasonable time necessary to determine whether or not there's a substantial probability that they will be able to achieve competency within the reasonable foreseeable future. So in addition, the statute contains safeguard language that says in no --" that under no circumstances will it be beyond four months. And if it's going to exceed that, there has to be a hearing in front of the Court, and the Court has to make findings in that instance that there's actually a relation between the defendant being held longer and the ability to say that he's going to be restored to capacity later on. You just can't hold him to say, well, we want to try a little farther. The government actually has to present evidence to show that there's a reasonable basis to believe that a little bit longer holding will, in fact, render the defendant to be competent in the near future. The defense argues, well, I'm sorry, to get back to my earlier point, those procedural safeguards that are contained in 4241D are what distinguishes this case from Lopez de Alenzuela, because in that case, in Lopez de Alenzuela, they were just going to be held pending the duration of the proceedings, but in Strong and in 4241D, there are safeguards in there to necessitate that the reason that they're being held is met, that is, the purpose set forth in the statute, that it's limited as to timeframes. There are also flexible safeguards in there that allow for earlier release, if necessary, and procedural safeguards in there if there is going to be a necessity for a longer holding. The defense in this case argues for a heightened standard, arguing that Strong was decided under the wrong standard. However, Strong was decided underneath the standards set by the Supreme Court. There has been no Supreme Court case that has required a more heightened standard in involuntary commitment situations. As such, they did apply the right standard. But even if we were to apply the heightened standard set forth in Hickey v. Morris, the government would only be required to show that the detention was substantially related to an in-court and government purpose. The ability to prosecute individuals who have been committed, who have been found to have committed a crime, probable cause has been found to hold them for committing a crime, has been found to be both legitimate and compelling as set forth in Supreme Court in Moran v. Burbine. As set forth in Craig v. Boren, which was actually a classification case, we would not have to show narrowly tailoring, but simply that there was a substantial relation between that government purpose. As we can already establish a compelling purpose, we have clearly met the purpose part of it. But in this case, there are other reasons besides just the restoration to capacity that necessitate and show that this  restoration to competency, we're not just talking about treatment. We're not just talking about therapy. We are talking about a what the Court has described as a need for a detailed and more thorough examination than what we would have for the initial finding of lack of competency. We are also talking about a situation where at some point the medical doctors at the facility might decide that perhaps they need to, given the defendant's particular circumstances, might need to medicate, which is certainly not something that should be assessed on an outpatient basis, but instead should be subject to the random and thorough assessments that would take place at the BOP facility. Well, wouldn't that just be part of an individualized analysis? It would be. But one thing to note is this individualized analysis of whether or not outpatient versus inpatient can't really be taken place on the record that's typically created when someone just has an initial two- to three-hour evaluation to determine whether or not they might possibly not understand the proceedings and aren't able to communicate with their attorney. The to determine whether or not someone would be better off inpatient versus outpatient would seem to need the more thorough analysis, which is what the would be addressed when the person is then remanded to the CUSC AG for a long and thorough analysis. Just a moment ago when you said the initial determination, the words you used were incompetent. But in order to get into this whole process, he's got to be found to be incompetent right now. That is correct, Your Honor, by preponderance of the evidence. And also, in Salerno, which is actually a Bail Reform Act case, this Court or the Supreme Court noted there are times when an individual's liberty interest, no matter how fundal, gives way to the public's interest. In Salerno, they were specifically addressing whether or not detaining someone as being a danger to the community might violate due process. But in doing that, in assessing that case, the Court noted many other situations where a person's individual liberty has given way to important government interest, citing wartime detainees and also citing the civil commitment detainees in the what would now be 4241D, citing Jackson v. Indiana. And the Court noted that point, that they would assess Salerno in the same manner that they have assessed other cases in the past. But regardless of the standard of scrutiny, this particular statute meets constitutional muster because it does — it is for a legitimate and compelling purpose. The government would have the burden of show that someone was competent to stand trial at the time. There are procedural safeguards in place to ensure that someone is not held for an overly undue long time. In addition, there are — this statute is, while the government's not required to show it, it is narrowly tailored. It's not every defendant. It's only those defendants who have been found to be — have a mental disease or defect such that they're not competent to stand trial. What happens to defendants that need to get into one of these facilities and they're waiting? What happens in the meantime? Well, Your Honor, that wasn't the issue in this case. In this particular instance, the magistrate, which in his orders affirmed by the district court, did not order the defendant into custody immediately. Instead, he allowed the defendant to remain out of custody on pretrial release pending a notification that a bed was available, that way limiting and basically limiting the possibility that he was going to be held for a really long time just waiting for a bed, which would have been the — was the problem that was addressed in Org — or Mink v. Oregon or Oregon v. Mink, where the court found that there was no rational relation between holding somebody in custody just waiting for a bed. That does nothing to help bring somebody back to competency. In a sense that actually the situation, the factual situation in Strong, where the lower court allowed the person to remain in a sort of a recovery halfway house until he violated conditions. Yes, until he violated, and that is correct. So there's no — there's no detaining somebody in this instance that would have no relation to the purpose for the detention. The detention in this case is very strictly limited and has a very limited purpose. Does he — does somebody who's in this sort of waiting — limbo, waiting for a bed, do they get any kind of care or any kind of treatment or anything? Or are they just out of custody waiting? Well, this particular defendant remains underneath the supervision of pretrial services. As far as I know, there are — there is no specific treatment other than they're monitoring — Do you know what the wait period is back at the — I guess there's two facilities. Do you know? I don't know, Your Honor. I could check on that. I think it sometimes just kind of depends on the time of the year. Sometimes it's right away. Sometimes it's longer, but — Let me ask you as a side point that, you know, we have these cases about whether people can be forcibly medicated. So if this person's transmitted to Butner, does it require another proceeding then for forcible medication to restore competency? That is correct, Your Honor. That's what I got. And that's — to get to another point, SEL v. United States does not change the landscape or affect 4241D in any means. SEL was limited to a very specific issue of whether or not a defendant could be involuntarily medicated against his will solely for the purpose of rendering him to be competent. It's not applicable in this situation. It's also not intervening authority because it was decided three-and-a-half years before Strong. But given the fact that it's a very specific finding in that case, strictly relating to medication, and they also noted that medication needed to be the least restrictive means, which was the third part of their test, but they limited that least restrictive means solely to the medication finding, in that end of the province of Miller v. GAMI, that case is not clearly irreconcilable with Strong or the provisions of 4241D. Turning to the Rehabilitation Act, defense and amicai have argued that the Rehabilitation Act and DOJ regulations require that the defendant receive his treatment in the least restrictive means possible. It is true those acts do state that, but they are general acts. They are they basically aspire to a policy that should be held generally to all persons that are disabled. But they don't contradict or contravene or abrogate in any way the mandates of 4241D. This issue was not raised in the district court in any way or fashion. As such, there was no way that the district court could have erred, much less plainly erred, by not finding that 4241D was in violation of the Rehabilitation Act. And, Counsel, am I correct that the relevant provisions of the Rehabilitation Act were passed prior to the enactment of the Bail Reform Act here? Well before. That is correct. And so there's two rules of statutory construction that we would be looking at. The first being, relating to Your Honor's question, that when two statutes are passed, one much later than the other one, generally the court considers that Congress knew of the existence of this previous act at the time that they passed the latter act, and they will not go out of their way to find them to be in conflict. The second issue of statutory construction is when we're talking about a general statute versus a specific statute. The Rehabilitation Act is, again, just a very general statement regarding policy and least respective means of treating or helping those who are disabled. But 4241D is a very specific act that relates specifically to instances where people have been found to have a mental disease or defect and who also cannot understand the proceedings or communicate with their attorney. In this particular instance, 4241D will control regardless of the timing of the passage. The Supreme Court has noted in language that Congress generally, when they pass a statute, they mean what they say and they say what they mean, and I may have actually switched that. But and in this particular instance, when Congress passed this statute, they were very clear to say that they shall go inpatient for the reasons that I've already argued before this Court this morning. Do they actually use the term inpatient? My understanding is, yes, they do. They do in the ‑‑ Are the they here being the statute or the regs? The ‑‑ not the regs. The statute is hospitalization. Hospitalization. The statute is hospitalization, Your Honor. And but when we're looking at statutory construction, we look at what a word commonly means and hospitalization. Hospitalization, it could be for the day. But you would still be hospitalized in a particular facility. If we're talking about treatment, we generally say outpatient treatment. We don't say inpatient hospitalization. We say hospitalized, which is the general meaning of the term. Well, but it's also committed to the custody. It starts with committed to the custody of the attorney general. So once you're there, it's only hypothetical. But if the attorney general were to decide that for individuals outpatient might be better, I don't know who could sue him to stop it. Presumably the prisoners wouldn't want that. I'm not suggesting how he should allocate his budget. But if I had to interpret it, I could interpret it under his discretion to be something different, but not mandatory. Well, there's two parts to that. The language of the statute, we don't just look at the word hospitalized by itself. We look at the entire terms, and it says shall commit, which normally means to place in custody, in the custody of the attorney general for placement at a suitable treatment facility as set forth in 4247. The statute gives the discretion to the attorney general to decide what that appropriate treatment facility is. But going back to the Rehabilitation Act, even if it was to apply, the defendant would have to show that he is, in fact, a qualified person with a disability and that he's being discriminated against solely on the basis of that disability. Again, since this issue was not raised below, there's an insufficient record to show that he's disabled. It's true that there's some mention in the report of diagnoses that might lead someone to believe he's disabled. But those are based on the defendant's reporting, and there's a rebuttable presumption there that he may not be, or I'm sorry, any presumption that he might be disabled is rebutted by the examiners noting under those diagnoses that there was a possibility of him malingering. Second, this isn't solely on the basis of his disability being placed there. As this Court said in U.S. v. Garza, the mental illness is irrelevant, or whatever disability is irrelevant, if the defendant can understand the processes. This person's not being placed in custody in commitment purposes just because he's allegedly mentally ill. He's being placed there because he meets the test for competency. In closing, if this Court was to follow what the defense wanted to do, they would have to find that the district court erred in following strong and overrule that panel decision. You would have to call into question the Supreme Court's reasoning in Jackson v. Indiana. You would be requiring the Court or the Attorney General to have a mini-trial on the issue of outpatient versus inpatient treatment, which would thus constructively amend 4241D's mandate of commitment to the custody of the AG for purposes. You would have to find that the Rehabilitation Act, which is a statute of general construction, contradicts a very specific statute in violation of well-established rules of statutory construction, and that you would have to find that the words shall, commit, custody, and hospitalize are vague, even though their meanings are well-known and ambiguous. Thank you. Thank you. I have many points to cover. I'll try to get to them all. To begin with, the disability claim was not raised in the district court, but it is almost, my claim is almost certainly qualifies as an individual with a disability. That's discussed on pages 27 through 28 of the reply brief. But there's been no finding by the district court. There has been no finding, but if we were to prevail on any theory, this has to go back to the district court for further findings. And the Rehabilitation Act has been amplified through case law via Olmstead. There's also the PAT Act, which is cited in the briefs, which was enacted in 2000 well after this 4241. I explained in my opening why this Court is not bound by Strong. SELL did set forth a framework for balancing a significant liberty interest against the government's countervailing interest in prosecution in the context of competency restoration. The Strong Court did not consider that. I've explained why Lopez Valenzuela, in the pretrial detention context, also impliedly overrules Strong, and that is also further explained in 28J No. 77. And I would emphasize that this situation is really properly analyzed as a pretrial detention statute. There's no indication that my client's liberty would be jeopardized if he hadn't been charged with a federal crime. The State has never seen fit to initiate civil commitment proceedings against him. Jackson, as the government conceded, was limited to indefinite detention. Jackson was issued in 1972. Since Jackson, we've had Addington, O'Connor, Salerno, SELL, Lopez Valenzuela. Our knowledge of how competency can be restored has just exponentially grown since 1972. And these issues under the Equal Protection Clause and under the Due Process Clause have to be judged by today's standards under Oberfell and Morales-Santana. The government suggests that this would create a need for a mini-trial. Well, that happens all the time in the criminal justice system. That happens under the Bail Reform Act, where these sorts of factors have to be considered to determine whether any conditions can reasonably satisfy the concerns of the government. The government says that this is not a long time. Well, four months is a very long time. And as I said, this is can be longer than the defendant would actually spend if he is ultimately convicted. But it's also important to understand that it's almost always four months. BOP is suffering from severe staff shortages. I cited a Department of Justice Task Force report in the reply brief, I believe, and that situation has only gotten worse. Just a few weeks ago, we were informed that we can expect further delays not just to wait for bed space, but for the evaluation process once they're at BOP. So this is almost always going to be at least four months, and it's usually going to be more than that, because BOP simply doesn't have the staffing that they need. I think that the Attorney General would make some sort of effort to construe the statute to allow them to. But when you say more than four months, you're adding on a pre-transmission period. No, Your Honor. I'm talking about the amount of time that it actually takes once they're at BOP because of the staffing shortages. Yes. And because of that, I thought from our discussion they could get habeas immediately then because there's no basis for keeping them. Well, Your Honor, what happens in reality is the government comes back and says BOP needs more time, and so then the court says, okay, we'll recommit for another four months. In reality, that's what typically happens. Well, you think that the Attorney General might want to be a little more economical and look at other measures. Well, true. I mean, especially because we have outpatient restoration program right in Tucson, which is a fraction of the cost of incarcerating someone for four months. Just help me here because maybe I just didn't read deeply enough. So you're saying that the four months simply by the court's say-so can be extended indefinitely? Not indefinitely. Repeatedly. Repeatedly, yes. For a reasonable period of time, whatever the court determines that that means. And that is statutory under what subsection? 4241D. D sub something or no? I don't believe there's subsections. It's 4241D. There has to be another hearing in front of the district judge and the district judge needs to make appropriate related findings. Yes, Your Honor. And finally, I believe I just wanted to point out that in the equal protection analysis, this does burden pretrial liberty, so it should be strict scrutiny, and it does require necessity under Dunn. And the Supreme Court of Georgia did just find a very similar statute unconstitutional considering all of the knowledge that we have today. Okay. Thank you, Your Honor. Thank you very much. We appreciate your arguments. Interesting case.  And that ends our session for today and for the panel for the week. Thank you very much. Safe travels. All rise.
judges: Boggs, Paez, Owens